UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>v.<br><br>**EIGHTY-TWO THOUSAND THREE HUNDRED DOLLARS ($82,300) IN U.S. CURRENCY,**<br><br>Defendant *In Rem*. | 2:18-cv-11848<br><br>HON. TERRENCE G. BERG<br><br>**ORDER DENYING GOVERNMENT'S MOTION TO DISMISS CLAIM FOR LACK OF STANDING, AND DENYING CLAIMANT'S MOTION TO DISMISS COMPLAINT** |

This is an *in rem* civil forfeiture action brought by the United States of America against $82,300 in U.S. Currency. Drug Enforcement Administration ("DEA") agents seized this money from Lamar Eddington at the Detroit Metropolitan Airport. Compl., ECF No. 1 PageID.1–2. Demond Gibson, Claimant in this case, argues the money belongs to him. The government, however, asserts that the money is connected to a suspected drug deal and

thus that it is entitled to civil forfeiture of the $82,300 under 21 U.S.C. § 881(a)(6). This case is presently before the Court on Claimant's motion to dismiss the government's complaint for civil forfeiture (ECF No. 6), and the government's motion to strike Gibson's claim and dismiss his interest in the $82,300 for lack of standing (ECF No. 14). For the reasons discussed below, the Court will deny both motions.

**BACKGROUND**

On January 29, 2018, DEA agents seized $82,300 from Lamar Dajuan Eddington at the Detroit Metropolitan Airport in Romulus, Michigan. ECF No. 1 PageID.3. The government states that it became interested in Eddington because DEA agents had "received information" about him, that Eddington had multiple prior felony drug convictions and he was traveling on a one-way ticket from Detroit, Michigan to San Francisco, California. *Id.*

Plain-clothes DEA agents waited for Eddington at his gate, showed him their credentials, and asked about his travel plans. *Id.* at PageID.3–4. The government alleges Eddington could not provide any detailed information about his travel plans and was

2

unable to produce any information to corroborate basic facts he disclosed to the agents. *Id.* at PageID.4. While this conversation with Eddington was unfolding, other DEA agents located a checked suitcase with a name-tag reading "Lamar Eddington." *Id.* They placed that suitcase in a lineup of three other similar suitcases and a trained narcotics canine named Lightning carried out a K-9 sniff. *Id.* at PageID.5. Lightning "gave a positive indication for narcotics odor coming from the suitcase" with Eddington's name-tag. *Id.* With Eddington's consent, agents searched the suitcase. *Id.* They initially found a manila envelope, and asked Eddington what was inside. Eddington responded: "paperwork." *Id.* When the agents opened the envelope, they found another white plastic envelope. *Id.* Inside that envelope they found magazines taped along the edges. *Id.* Upon un-taping the magazines, they found $82,300 in U.S. currency, all in $100 bills, which is at issue in this suit. *See id.*

When the agents informed Eddington of their discovery, he responded by stating "yeah." *Id.* Eddington then agreed to accompany the agents to an office and continue speaking with them. *Id.* at PageID.6. He was not under arrest at this point and

consented to a search of his bags and person. *Id.* Lightning conducted another K-9 sniff on the cash found in Eddington's checked luggage and "positively alerted to the presence of a controlled substance emitting from the currency." *Id.* Eddington admitted that he had attempted to hide the money inside the magazines to evade law enforcement. *Id.* at PageID.7. But no drugs, scales, or any other items indicative of drug manufacturing or sale appear to have been recovered during the search. *See generally id.* Eddington then told the agents the money he was transporting belonged to a friend named Demond Gibson, Claimant in this suit, and that Gibson gave it to him at the Motor City Casino in Detroit on January 28, 2018. *Id.* According to Eddington, Claimant wanted him "to possibly purchase an eighteen-wheeler truck [with the money], but he did not have contact information for any truck dealership or seller." *Id.* The government alleges that agents then seized the $82,300 from Eddington "[b]ased upon probable cause that the Defendant Currency was either derived from the sale of controlled substances and/or intended to be used to purchase controlled substances." *Id.* at PageID.8.

The government began administrative forfeiture proceedings for the $82,300 seized from Eddington. *Id.* Gibson filed a claim for the entire amount and the matter was subsequently referred to the United States Attorney's Office for judicial proceedings. *Id.* The parties' briefs contain no specific information about the administrative proceedings but Claimant does not dispute that the government complied with applicable law during the administrative forfeiture process. On June 11, 2018, the government filed a complaint for civil forfeiture with this Court. ECF No. 1. The government served Claimant with the complaint and a notice of forfeiture proceedings on June 19, 2018. ECF No. 3. Claimant answered the complaint on July 10, 2018 and filed a motion to dismiss the complaint the following day, July 11, 2018. ECF Nos. 5, 6. Claimant did not file a traditional verified claim to the $82,300 until July 30, 2018, six days after his deadline to do so. ECF No. 9. On that basis, the government moved to strike Claimant's verified claim and dismiss his interest in the money for lack of standing. ECF No. 14.

## DISCUSSION

The government claims it is entitled to civil forfeiture of the $82,300 seized from Eddington because "[a]ll moneys . . . or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical," and all proceeds "traceable to such an exchange" are subject to forfeiture to the United States government. 21 U.S.C. § 881(a)(6). At the pleading stage, civil forfeiture actions are "governed jointly by the Federal Rules of Civil Procedure and the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions." *United States v. Real Prop. Located at 6001 N. Ocean Drive*, No. 15-11574, 2015 WL 5209637, at *1 (E.D. Mich. Sep. 4, 2015) (Cleland, J.) (citing 18 U.S.C. § 983(a)(3)(A)). "While the supplemental rules govern, the normal set of rules may help to clarify any ambiguity." *6001 N. Ocean Drive*, 2015 WL 5209637, at *1 (quoting *United States v. One Gulfstream G-V Jet Aircraft*, 941 F. Supp. 2d 1, 13 (S.D.N.Y. 2013) (internal quotation marks omitted)).

### A. Government's Motion to Strike Claim and Dismiss Interest.

The government urges that Claimant lacks statutory standing to challenge civil forfeiture because he failed to file a verified claim of interest within the timeframe specified by Rule G(5)(a)(ii). On that basis, it seeks to strike Claimant's claim and dismiss his interest in the $82,300 at issue. But an affidavit attached to Claimant's motion to dismiss, which was filed within the time permitted by Rule G(5)(a)(ii), meets the criteria for a verified claim. ECF No. 6-1 PageID.65. Based on the affidavit, this Court finds Claimant indeed has statutory standing to challenge civil forfeiture and accordingly will deny the government's motion to strike his claim and dismiss his interest in the $82,300. ECF No. 14.

A claimant "must have both Article III and statutory standing to contest a civil forfeiture." *U.S. v. $5,730.00 in U.S. Currency*, 109 F. App'x 712, 713 (6th Cir. 2004) (citing *United States v. Currency $267,961.07*, 916 F. 2d 1104, 1107 (6th Cir. 1990)). Article III standing is satisfied if the claimant demonstrates a "mere colorable interest in the seized property." *$5,730.00*, 109 F. App'x at 713. The

government does not specifically dispute that Claimant can demonstrate Article III standing. Rather, it seeks dismissal of his interest solely on the basis that Claimant filed his verified claim after the deadline expired under Rule G(5)(a)(ii) and therefore lacks statutory standing. *See generally* ECF No. 14.

Statutory standing in a civil forfeiture action, as the Sixth Circuit has repeatedly held, requires a claimant to "strictly comply" with Rule G of the Supplemental Rules. *U.S. v. One 2011 Porsche Panamera*, 684 F. App'x 501, 506 (6th Cir. 2017) (citing *United States v. One Men's Rolex Pearl Master Watch*, 357 F. App'x 624, 627 (6th Cir. 2009) (requiring "strict compliance" with the requirements of Rule G) (additional citations omitted)). Under Rule G(5)(a)(i), "[a] person who asserts an interest in the defendant property may contest the forfeiture by filing a claim in the court where the action is pending." A claimant "must file a verified claim within thirty-five days after the government sends a forfeiture notice, and file an answer within twenty-one days after filing a verified claim." *U.S. v. Real Prop. and Premises*, 521 F. App'x 379, 384 (6th Cir. 2013) (citing Fed. R. Civ. P. Supp. R. G(5)(a)(ii) and

G(4)(b)(ii)(B)–(C)). The verified claim must: (A) "identify the specific property claimed"; (B) "identify the claimant and state the claimant's interest in the property"; (C) "be signed by the claimant under penalty of perjury"; and (D) "be served on the government attorney designated [to receive notices]." Fed. R. Civ. P. Supp. R. G(5)(a)(i).

The government sent its complaint and forfeiture notice to Claimant on June 19, 2018. ECF No. 3. Accordingly, under Rule G and the timeline set forth in the forfeiture notice, Claimant's verified claim had to be submitted no later than by July 24, 2018. *See* Fed. R. Civ. P. Supp. R. G 5(a)(ii); Fed. R. Civ. P. Supp. R. G(4)(b)(ii)(B); ECF No. 14 (stating that the government gave Claimant 35 days to file his claim). Claimant did not file his verified claim until July 30, 2018, six days after that deadline. ECF No. 9. But he did file an answer and then a motion to dismiss the government's complaint *within* 35 days of the date the government sent its forfeiture notice.[1]

---

[1] Claimant does not specify the statutory basis for his motion to dismiss. If the motion to dismiss is one for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the motion is technically untimely because a motion asserting any defense under Rule

Attached to Claimant's motion to dismiss is his sworn affidavit. ECF No. 6-1 PageID.65. While the affidavit was filed as an exhibit to Claimant's motion to dismiss, and not identified as a verified claim as such, it meets Supplemental Rule G's requirements for verified claims. *See id.* It identifies the $82,300 Claimant contends belongs to him, and explains Claimant's ownership interest in the property. *Id.* Specifically, Claimant explains that the $82,300 is part of $158,500 he won at the Motor City Casino on January 28, 2018, the day before Eddington was stopped at the Detroit airport. *Id.* Critically, the affidavit was also signed and sworn by Claimant and served on the government along with the motion to dismiss. Accordingly, the affidavit meets the parameters of Rule G(5)(a)(i). This Court will thus construe it a timely verified claim and on that basis deny the government's motion to dismiss Claimant's interest in the $82,300.

---

12(b) "must be made before pleading." Fed. R. Civ. P. 12(b). The Court, however, will construe Claimant's motion as one for judgment on the pleadings under Rule 12(c), which may be filed after the answer. *See Shoucair v. Williams*, No. 07-12964, 2010 WL 5015348, at *2 (E.D. Mich. Oct. 27, 2010) (report and recommendation) (Hluchaniuk, M.J.).

10

## B. Claimant's Motion to Dismiss Civil Forfeiture Complaint.

Claimant moved to dismiss the government's complaint on the basis that the government has not sufficiently pled a justification for civil forfeiture. ECF No. 6. Specifically, Claimant avers the government has not satisfied the pleading requirements for civil forfeiture actions established by the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.[2] Because Claimant's motion to dismiss was filed after his answer, the Court considers it a motion for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See infra* at 9–10 n.1. Claimant is unable to meet the standard required for judgment on the pleadings, however, so Plaintiff's motion will be denied.

Motions under Rule 12(c) are "functionally equivalent to a motion to dismiss" and "are analyzed using the same standard

---

[2] Claimant contends pleading requirements in civil forfeiture actions are governed by Supplemental Rule E(2). *See generally* ECF No. 6. But since the enactment of Supplemental Rule G in 2006, civil forfeiture complaints are properly assessed under Rule G. *United States v. $1,111,120.00 in U.S. Currency*, No. 3:10-cv-317, 2014 WL 12788164, at *2 n.1 (S.D. Oh. Feb. 18, 2014) (citing Fed. R. Civ. P. Supp. R. G Advisory Committee Notes). The actual pleading standard has not changed; the standard under Rule E(2) simply "evolved to the standard stated in subdivision [G](2)(f)." Fed. R. Civ. P. Supp. R. G Advisory Committee Notes.

employed for a motion to dismiss under Rule 12(b)(6))." *United States v. One Million Seven Hundred Thousand Dollars ($1,700,000.00) in U.S. Currency*, 545 F. Supp. 2d 645, 651 (E.D. Mich. Feb. 28, 2008) (Cleland, J.) (citations omitted); *United States v. Vehicle 2007 Mack 600 Dump Truck, VIN 1M2K189C77M036428*, 680 F. Supp. 2d 816, 826 (E.D. Mich. Jan. 20, 2010) (Rosen, J.) (citing *Tucker v. Middleburg—Legacy Place*, 539 F. 3d 545, 549 (6th Cir. 2008)). Despite the heightened pleading burden borne by the plaintiff in a civil forfeiture action, "[f]or purposes of a motion for judgment on the pleadings, all well-pleaded material allegations of the pleadings of the opposing party [the government] must be taken as true, and the motion may be granted only if the moving party is clearly entitled to judgment." *JPMorgan Chase Bank, N.A. v. Winget*, 510 F. 3d 577, 582 (6th Cir. 2007) (internal quotations and citation omitted). In making this determination, the Court "need not accept as true legal conclusions or unwarranted factual inferences." *Winget*, 510 F. 3d at 581–82 (quoting *Mixon v. Ohio*, 193 F. 3d 389, 400 (6th Cir. 1999)).

Rule G(2) outlines the heightened pleading standard applicable in civil forfeiture actions. That rule provides that complaints in civil forfeiture actions must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). Since the Civil Asset Forfeiture Reform Act's ("CAFRA") enactment in 2000,[3] the government's burden of proof has been to establish, by a preponderance of the evidence, that the property at issue is subject to forfeiture. 18 U.S.C. § 983(c)(1). Additionally, the Sixth Circuit held in *United States v. Real Prop. 10338 Marcy Road Northwest, Canal Winchester, Ohio*, 659 F. App'x 212, 216 (6th Cir. 2016) that where, as here, the government seeks forfeiture of illegal drug activity under 21 U.S.C. § 881(a)(6), it must show a "'substantial connection' between the property to be forfeited and illegal drug-trafficking activity." *But see United States v. $21,000.00 in United States Postal Money Orders and $785.00 in U.S. Currency*, 298 F. Supp. 2d 597, 601 (E.D. Mich. 2003) (explaining

---

[3] Congress enacted CAFRA" to "make federal civil forfeiture procedures fair to property owners and to give owners innocent of any wrongdoing the means to recover their property and make themselves whole after wrongful government seizure." H.R. Rep. No. 106–192, at 8 (1999).

that the burden of demonstrating a substantial connection "does not require the government to prove a *direct* connection between the illegal activity and the seized assets") (emphasis added).

At the same time, Rule G(8) provides that a civil forfeiture complaint "cannot be dismissed on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property." Fed. R. Civ. P. Supp. R. G(8)(b)(ii). Rather, Rule G(8) provides, "The sufficiency of the complaint is governed by Rule G(2)." That Rule sets out certain basic requirements, including the standard set out above, that the complaint must "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f).

Other courts have interpreted Rule G(8)'s provision to mean that the government's forfeiture claim may advance in the face of a motion to dismiss (or motion for judgment on the pleadings) "even if the Government's complaint does not provide all the facts that would allow the Government to ultimately succeed in the forfeiture proceeding." *United States v. $225,300.00 in U.S. Funds from*

*FirstBank (Jackson, TN) Account No. 86476002 in Name of Norene Pumphrey*, No. 1:12-cv-01075, 2012 WL 4486105, at *3 (W.D. Tenn. Sep. 27, 2012) (quoting *United States v. 630 Ardmore Drive, City of Durham, Parkwood Tp., Durham County, N.C.*, 178 F. Supp. 2d 572, 581 (M.D.N.C. 2001)).

Under Rule 12(c), Rule G, and CAFRA's burden of proof provision, 18 U.S.C. § 983(c)(1), the government here must plead facts sufficient to establish by preponderance of the evidence that the $82,300 DEA agents seized from Eddington at the Detroit airport was properly subject to forfeiture and had a "substantial connection" to unauthorized drug sale or purchase. *See 10338 Marcy Road Northwest, Canal Winchester, Ohio*, 659 F. App'x at 216. Here, the allegations do not include any statements that Eddington or Gibson were engaged in selling or purchasing illegal drugs at or around the time its agents seized the $82,300 from Eddington at Metro airport. It is alleged that Eddington had multiple prior felony drug convictions, but such history is not in and of itself proof that the money he was carrying in this instance was used in illegal drug sales or purchases. ECF No. 1 PageID.3; *see*

15

*$21,000 in U.S. Postal Money Orders and $785.00 in U.S. Currency*, 298 F. Supp. 2d at 603 (finding that a claimant's prior drug convictions were probative but "insufficient to show a connection [between the defendant property and illegal drug transaction] by a preponderance of the evidence"). It is also alleged that a trained narcotics canine "gave a positive indication for narcotics odor" emanating from the suitcase belonging to Eddington and from the $82,300 in cash. This proof does suggest that the money was connected to the purchase or sale of illegal narcotics. But to conclude that the facts pled by the government are sufficient to establish a "*substantial* connection" between the $82,300 and illegal drug trafficking is a closer call. Putting aside that question for the moment, Rule G(8)(b)(ii)'s provision that a "complaint *cannot be dismissed* on the ground that the government did not have adequate evidence at the time the complaint was filed to establish the forfeitability of the property" (emphasis added) certainly counsels in favor of denying Claimant's motion here. To dismiss at this stage solely because of a somewhat slack connection in the complaint between the seized money and drug trafficking would

seem to violate this Rule. It may be that further investigation has discovered additional evidence in support of showing a substantial connection between the money and drug trafficking. And keeping in mind the Court's obligation to evaluate the sufficiency of the complaint under Rule G(2), the Court finds, though perhaps just barely, that the complaint may be said to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f). The Court will thus deny Claimant's motion to dismiss.

## CONCLUSION

For these reasons, the government's motion to strike claim and dismiss interest (ECF No. 14) is **DENIED**. Claimant Demond Gibson's motion to dismiss the complaint for civil forfeiture (ECF No. 6) is also **DENIED**.

**SO ORDERED.**

Dated: March 11, 2019

s/Terrence G. Berg  
TERRENCE G. BERG  
UNITED STATES DISTRICT JUDGE
